STATE OF CONNECTICUT *v.* JASMINE BEREIS
(AC 29420)

Bishop, Robinson and Peters, Js.

Submitted on briefs February 10—officially released May 26, 2009

*Sebastian O. DeSantis*, special public defender, filed a brief for the appellant (defendant).

*Michael L. Regan*, state's attorney, and *Melissa Patterson* and *Christa L. Baker*, deputy assistant state's attorneys, filed a brief for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Jasmine Bereis, appeals from the judgment of conviction, rendered after a jury trial, of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) and failure to appear in the second degree in violation of General Statutes § 53a-173. On appeal, the defendant claims that the trial court improperly denied her motion for a judgment of acquittal because the

evidence was insufficient to support her conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The state filed a substitute information on September 5, 2007, which charged the defendant with evasion of responsibility in the operation of a motor vehicle under § 14-224 and failure to appear in the second degree under § 53a-173.[1] The evasion of responsibility charge stemmed from an incident on June 24, 2005, when the police responded to a report of a minor vehicular accident on High Street in New London. The defendant had been driving a 1987 Toyota pickup truck belonging to her boyfriend, Steven Potter, on that date.

---

[1] General Statutes § 14-224 (b) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes physical injury, as defined in section 53a-3, to any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to the owner of the injured or damaged property, or to any officer or witness to the physical injury to person or injury or damage to property, and if such operator of the motor vehicle causing the physical injury of any person or injury or damage to any property is unable to give his name, address and operator's license number and registration number to the person injured or the owner of the property injured or damaged, or to any witness or officer, for any reason or cause, such operator shall immediately report such physical injury of any person or injury or damage to property to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the physical injury of any person or the injury or damage to property and his name, address, operator's license number and registration number."

General Statutes § 53a-173 provides: "(a) A person is guilty of failure to appear in the second degree when (1) while charged with the commission of a misdemeanor or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, or (2) while on probation for conviction of a misdemeanor or motor vehicle violation, he wilfully fails to appear when legally called for a violation of probation hearing.

"(b) Failure to appear in the second degree is a class A misdemeanor."

The complainant's van was parked on the street when the defendant backed the pickup truck out, struck the right side of the unoccupied van and drove away.

The complainant gave Charles Flynn, the responding police officer, a brief description of the vehicle, and Flynn subsequently contacted Potter and the defendant. The defendant went to the New London police department the next day and admitted to Flynn that she had been operating the truck and that it had hit the van. She also admitted to Potter that she had hit something while driving his truck after he had noticed that the bumper was bent in, the taillight was cracked and there was blue paint transfer on the bumper. She indicated to Flynn that she left the accident scene because "she was having a bad day and whatever crisis she was having, she couldn't stick around for the investigation of the accident." The defendant subsequently failed to appear at a scheduled court appearance, and the state charged her with failure to appear in the second degree.

A trial was held on both counts on September 13, 2007, and the jury returned a verdict of guilty on that date. The defendant filed a motion for a judgment of acquittal on October 23, 2007, which was denied by the court on October 25, 2007.[2] She was sentenced on October 25, 2007, to a total of two years incarceration, execution suspended, and two years probation.[3] This appeal followed. Additional facts will be set forth as necessary.

The defendant challenges the sufficiency of the evidence to support her conviction on both the charge of evasion of responsibility in the operation of a motor

---

[2] The defendant also made an oral motion for a judgment of acquittal after the close of the state's evidence, which was denied by the court.

[3] The conditions of probation included submitting to mental health evaluations, taking prescribed medication, submitting to alcohol evaluation and treatment, remaining drug and alcohol free and submitting to random drug testing.

vehicle and the charge of failure to appear in the second degree. We address each claim in turn.[4]

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proven beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all of the elements of the crime charged beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290

---

[4] Before beginning our discussion, certain relevant procedural facts must be stated. At the close of the state's case-in-chief, the defendant made an oral motion for a judgment of acquittal, which was denied. The defendant then put evidence before the jury. "Because the waiver rule has been deemed constitutional; *State* v. *Perkins*, 271 Conn. 218, 228–45, 856 A.2d 917 (2004); we review [a] defendant's insufficiency of the evidence claim by examining all of the evidence before the jury. It is the propriety of the jury's verdict of guilty, not the propriety of the court's denial of a motion for a judgment of acquittal after the state's case-in-chief has been concluded, that we review." *State* v. *Khadijah*, 98 Conn. App. 409, 413–14, 909 A.2d 65 (2006), appeal dismissed, 284 Conn. 429, 934 A.2d 241 (2007). In this case, we therefore consider all of the evidence, regardless of whether it was introduced by the state or the defendant. See id., 414.

Conn. 904, 962 A.2d 794 (2009). "Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Goodspeed,* 107 Conn. App. 717, 724, 946 A.2d 312, cert. denied, 287 Conn. 920, 951 A.2d 570 (2008).

I

The defendant first claims that there was insufficient evidence to support her conviction of evasion of responsibility in the operation of a motor vehicle. She asserts that because she was unaware that she had been in an accident, she did not satisfy the element of § 14-224 (b) that she was "knowingly involved in an accident . . . ." General Statutes § 14-224 (b). We are not persuaded.

"To establish a violation of § 14-224 (b), the state first had to prove that (1) the defendant was operating a motor vehicle, (2) the defendant was knowingly involved in an accident and (3) the accident caused physical injury to any other person or damage to property. . . . Once those predicate elements were established, the state could prove a violation of § 14-224 (b) if it proved that the defendant failed to fulfill any one or more of the following duties required of him under the statute: (4) that the defendant failed to stop at once and render such assistance as may have been needed; or (5) unless there was evidence that the defendant was unable, for any reason or cause, to provide the statutorily required information at the scene, that the defendant failed to give his name, address, operator's license number and registration number to the person injured or to the owner of the damaged property, or to any officer or witness to the accident; or (6) if there was evidence that the defendant was unable, for any reason or cause, to provide the statutorily required

information at the scene, that the defendant failed to report immediately the physical injury or property damage to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and to give his name, address, operator's license number and registration number together with the location and circumstances of the accident causing the physical injury or property damage." (Citation omitted.) *State* v. *Goodspeed*, supra, 107 Conn. App. 725–26. Our Supreme Court has "previously . . . held that whether a defendant has knowledge that an accident caused injury or damage is irrelevant to the crime of evading responsibility; rather, it is a mandatory stop, ascertain and assist statute, which provides criminal penalties for the failure to do so." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 259, 856 A.2d 917 (2004).

The evidence adduced at trial was sufficient to support the defendant's conviction. The state submitted evidence that the defendant was operating the vehicle at the time that the accident occurred, that she knew that she had been in an accident and that the accident caused damage to property, namely, the parked van. The state also put forth evidence, and the defendant did not dispute, that she failed to stop at once and render such assistance as may have been needed as required by § 14-224 (b). Although the defendant testified that she did not find out until the next day that she had been involved in an accident, when Potter questioned her about the damage to his truck, and that she did not realize that she had been in an accident because she was very upset that day, the jury was free to disbelieve this testimony. This is particularly true because there was testimony that the defendant admitted to both Flynn and Potter that she had hit something that day while driving Potter's pickup truck. In reaching its

conclusion, the jury, as it was free to do, disbelieved the defendant and, thus, rejected her version of the events.

On the basis of this evidence, the jury reasonably could have found that the defendant knew that she had been in an accident. In construing the evidence in the light most favorable to sustaining the conviction, we conclude that the evidence was sufficient to support the defendant's conviction of evasion of responsibility in the operation of a motor vehicle.

## II

The defendant also claims that the evidence was insufficient to support her conviction of failure to appear in the second degree. She asserts that the state failed to prove the element of wilfulness that is required under § 53a-173. We disagree.

"[T]o secure a conviction for failure to appear. . . the state must prove beyond a reasonable doubt that the defendant was legally ordered to appear under the terms of his bail bond, that he failed to appear and that such failure was wilful. To prove the wilful element of failure to appear the state must prove beyond a reasonable doubt . . . that the defendant received and deliberately ignored a notice to appear . . . ." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 568, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). "[T]he word wilful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent . . . . Thus, wilful misconduct is *intentional misconduct*, which is *conduct done purposefully* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Outlaw*, 108 Conn. App. 772, 777, 949 A.2d 544, cert. denied, 289 Conn. 915, 957 A.2d 880

(2008). Because there "is no direct evidence of a defendant's state of mind . . . intent must be proved by circumstantial evidence." Id., 785.

In reviewing the defendant's claim that the evidence was insufficient to establish wilfulness, we must first construe the evidence in the light most favorable to the state. We must then determine whether, on the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. See *State* v. *Cassidy*, 236 Conn. 112, 136, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds by *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

The state presented the following evidence with respect to the failure to appear charge. The defendant had a court date of July 18, 2005, in New London for which she failed to appear, and a bail commissioner's letter was sent to her, ordering her to appear in court on August 8, 2005, and informing her that if she failed to appear on that date that she could be ordered rearrested. The letter was addressed to the defendant and sent to 33 Myrock Avenue in Waterford, which is the address the clerk's office had on file for the defendant.[5]

The defendant's attorney, Sean Kelly, was present in court on August 8, 2005; however, the defendant was not present, and the prosecutor requested that the defendant be rearrested.[6] The court ordered her rearrested on that date and set bond at $1000, and on September 23, 2005, she was rearrested on this charge.

[5] The defendant had other cases pending in the New London courthouse at the time, and a bail commissioner's letter also was sent to the defendant at the 33 Myrock Avenue address on another file besides the one in question. In her other file, a bail commissioner's letter was sent to her on August 2, 2005, to appear in court on August 23, 2005.

[6] Kelly had been appointed to represent her on April 29, 2005, on her other file and testified that "technically speaking, I wasn't her attorney on [this] file although I was acting as her attorney on that day."

The defendant admitted that she was not present in court on August 8, 2005, but testified that she did not deliberately miss her court date because she did not realize that she was due to appear in court on that date. She testified that she had assumed that her case would be combined with other cases that were pending against her in New London. She also testified that she was living in Canterbury at the time that she was rearrested because the house where she had been living, at 33 Myrock Avenue, which was her mother's house, had burned down in August.[7] The address on the defendant's appearance bond form was 108 Packer Avenue in Canterbury, which was dated June 25, 2005, the day of her arrest, and which was the address the defendant stated that she believed that the court had on file for her.[8]

The defendant appears to claim that because the bail commissioner's letter was sent to her mother's address, she was not aware that she was in jeopardy of being rearrested. She also puts forth the argument that because she had more than one case pending in the New London courthouse, she assumed that her cases would all be combined, and, therefore, she did not wilfully fail to appear for her scheduled court date in this matter. She further claims that her failure to appear could not have been wilful because she appeared in court on several occasions after August 8, 2005, but prior to her arrest in September.

The defendant cites *State* v. *Khadijah*, 98 Conn. App. 409, 909 A.2d 65 (2006), appeal dismissed, 284 Conn. 429, 934 A.2d 241 (2007), in support of her position that

[7] The state pointed out that the bail commissioner's letter had been sent to that address in July, but the defendant testified that her mother and sister were not the kind of people who would give her any of her mail that was sent to that address.

[8] The deputy clerk at the New London courthouse testified that as a matter of general procedure, the clerk's office is given a defendant's address from the police, who obtain the addresses directly from the defendant. The clerk also testified that the defendant is ultimately responsible for notifying the clerk's office of any address change and that the office did not receive any address change by the defendant.

she may have been negligent, but not wilful, regarding the scheduling of her court dates and in assuming that her cases had been combined and that her public defender would represent her in all of her cases. In *Khadijah*, jury selection for the defendant's trial commenced on August 12, 2003. At the end of the day, the court ordered the parties to appear the following morning at 10:45 a.m. The next day the defendant had not arrived for jury selection by 11:25 a.m., and the prosecutor requested that the defendant be rearrested. The defendant's attorney telephoned the defendant and returned to the courtroom to report that the defendant was on her way. After further discussion with counsel, the court ordered the defendant's bond forfeited at 11:28 a.m.[9] Id., 411.

Evidence was introduced during the trial in *Khadijah* on the failure to appear charge that the defendant was working two jobs and had delivered newspapers from 1 a.m., to 8 a.m., the morning of August 13, 2003. When the defendant returned home, she asked her boyfriend to wake her in the event that she should inadvertently fall asleep. At some point, the defendant did, in fact, fall asleep and did not wake until her attorney telephoned her from the courthouse. The defendant immediately departed for the courthouse and arrived later that morning. Id., 415. This court held that the evidence of the defendant's conduct of inadvertently falling asleep, after having asked her boyfriend to wake her in time for her court date if she fell asleep, and appearing at court after she woke up, did not establish beyond a reasonable doubt that she wilfully failed to appear in court at her scheduled time. Id., 418–19.

*Khadijah* does not support the defendant's position because there is no evidence in the record that the defendant took any steps to appear in court on August

[9] The state in *Khadijah* conceded at oral argument in this court that the defendant arrived at the courthouse on August 13, 2003, at approximately 11:30 a.m. *State* v. *Khadijah*, supra, 98 Conn. App. 415 n.6.

8, 2005. Furthermore, the defendant does not acknowledge the fact that regardless of whether attorney Kelly was representing her in both of her files or only her initial file, she was still required to appear in court herself.

The record in this matter is similar to that in *State v. Laws*, 39 Conn. App. 816, 668 A.2d 392 (1995), cert. denied, 236 Conn. 914, 673 A.2d 1143 (1996). The defendant, like the defendant in *Laws*, did not arrive in court at all on the scheduled date and, likewise, there was no contact between the defendant and her attorney before her failure to appear in court, nor on her court date. The defendant also did not attempt to contact the court or the prosecutor or make any effort to obtain receipt of correspondence that may have been sent to her mother's address.

We conclude that the jury reasonably could have found from the evidence that the defendant was not present in court on her assigned date and that her failure to appear was wilful and not the result of circumstances out of her control. "Weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role . . . ." (Citations omitted; internal quotation marks omitted.) *In re Emerald C.*, 108 Conn. App. 839, 859 n.15, 949 A.2d 1266, cert. denied, 289 Conn. 923, 958 A.2d 150 (2008). The jury heard the defendant's testimony about why she was not present in court on her assigned date and chose to reject it. We must defer to the jury's assessment of the credibility of the defendant and its finding that the defendant's conduct was wilful. Accordingly, we conclude that there was sufficient evidence to sustain the defendant's conviction of failure to appear in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.